IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LLOYD HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:04-cv-00966-WKW-VPM |
| ) | (WO) |
| IGA FOOD DEPOT, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lloyd Hill (hereinafter "Plaintiff") brings this action against IGA Food Depot and Buster Wilson (hereinafter "Wilson"), (collectively "Defendants"), alleging claims of a racially hostile work environment and retaliation pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*. (hereinafter "Title VII") and 42 U.S.C. § 1981 (hereinafter "Section 1981").

This cause is before the court for consideration of the defendants' Motion for Summary Judgment (Doc. #40). The court has carefully reviewed the submissions of the parties and finds that, for the reasons set forth below, the motion is due to be GRANTED.

**I. FACTS[1] AND PROCEDURAL HISTORY**

At the time of Plaintiff's hiring, Buster Wilson's Inc.,[2] owned by Wilson, operated three grocery stores, in Abbeville, Eufaula, and Columbia, Alabama. (Doc. #41, Ex. A at 2.) Plaintiff was hired in July 2001 as a meat-cutter in the Abbeville and Eufaula stores, and was promoted in January

___

[1] For purposes of Rule 56, the court construes the disputed facts in favor of the Plaintiff.

[2] Buster Wilson's, Inc. was doing business at the time under the name IGA Food Depot. The parties did not address whether the proper entity was sued.

2002 to meat market manager of the Eufaula store. His employment was terminated in January 2004. (*Id.*)

Plaintiff alleges that, over the course of his tenure as meat market manager, he was victimized by policies and procedures which singled him out solely because of his race, harassed by his store manager, William Garrett (hereinafter, "Garrett"), and made to endure an environment permeated by racism toward all African-Americans. Most of Plaintiff's complaints about store procedures relate to monitoring systems used by store management. For instance, Plaintiff was not allowed a key to the back door, and when Plaintiff used the back door for deliveries, Garrett stood in the meat market and monitored him, presumably to keep him from stealing. (Doc. #44, Ex. A at 8-9, 40.) When Caucasian meat-cutters, who worked under Plaintiff, requested the key to discard waste, Garrett provided the key without monitoring them. (*Id.* at 8-9.) Moreover, Caucasian managers in other stores had keys. (*Id.* at 40.)

Plaintiff was required to provide checklists for his daily activities (*Id.* at 39), the schedule he made for his employees was checked by Wilson and often changed (*Id.* at 40), and Garrett frequently made reports to management regarding the state of Plaintiff's inventory (*Id.* at 9). Allegedly, none of these monitoring procedures was applied to Plaintiff's immediate predecessor. (*Id.*) Finally, Plaintiff had no power to hire or fire, though Caucasian managers in other stores were granted that power. (*Id.* at 40-42.) Plaintiff alleges that he asked to hire an African-American meat-cutter with substantial experience but that Garrett refused and instead hired a Caucasian male with no experience. (*Id.* at 42.)

Garrett, in particular, allegedly victimized Plaintiff and created an environment permeated with racism. Plaintiff claims that Garrett believed that all African-Americans entered the store with

the purpose of stealing.  Thus, Garrett forced Plaintiff to leave his work area and watch African-American customers, which prevented Plaintiff from working.  (*Id*. at 9.)  According to Plaintiff, Garrett accused two African-American cashiers of stealing, without evidence, and terminated them, but refused to terminate a Caucasian cashier who was caught stealing.  (*Id. at* 45-47.)

Plaintiff claims to have asked the general manager of the store, Randy Woodham (hereinafter "Woodham"), why the store maintained so few African-American cashiers in relation to its clientele.[3]  (*Id.* at 47.)  The store, however, did not hire more African-American cashiers and Plaintiff allegedly overheard Garrett state that he had decided not to hire any more African-Americans.  (*Id.* at 47.)  He also claims to have seen Garrett throw away an application for an African-American cashier immediately upon receiving it.  (*Id.* at 44.)  That application belonged to Plaintiff's daughter. (Doc. #42, Ex. C at 126.)  Plaintff claims that his "problems" during the course of his employment started when he began complaining about the dearth of African-American cashiers.  (*Id.* at 7.)  He also alleges that he was terminated because of his complaint.  (Doc. #1, Compl. at 3.)[4]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") in February 2004. (Doc. #42, Ex. 3.)  In August 2004, the EEOC issued Plaintiff a right-to-sue letter. (Doc. #1.)  Plaintiff filed this Complaint in October 2004. (*Id.*) Defendants moved for summary judgment (Doc. #40), Plaintiff filed a response (Doc. #44), and

---

[3] Plaintiff alleges that he also asked this question to Garrett (Doc. #1 at 2), but he failed to submit evidence to support this allegation.

[4] Defendants generally dispute these allegations and offer numerous reasons why Plaintiff was terminated. For instance, Defendants allege that Plaintiff's poor management of the meat department resulted in the company's first citations from the Alabama Department of Agriculture and Industries for selling meat products with improper labels or expired dates (Doc. # 41, Ex. A at ¶¶ 8 and 21, Ex. B at ¶¶ 19-22), and that, because Plaintiff ordered more inventory than he could sell, the store lost $45,000 in profits in the last quarter of 2003 (*Id.*, Ex. A at ¶ 10, Ex. B at ¶ 9).

3

Defendants filed a reply (Doc. #45).

## II. JURISDICTION AND VENUE

Because this case arises under Title VII and Section 1981, the court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

*A.  Applicable Law*

Plaintiff alleges that he was subject to a hostile work environment and that Defendants terminated his employment in retaliation for his complaint that Defendants employed too few African-American cashiers, in violation of Title VII[5] and Section 1981.[6] Both statutes have the same requirements of proof and are subject to the same analytical framework. *See Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057,

---

[5] Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

[6] Specifically, Section 1981 provides, in relevant part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens. . . .
>
> ***
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 USC § 1981.

1060 (11th Cir. 1994); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994). Therefore, the court will explicitly address Plaintiff's Title VII claims with the understanding that the analysis applies to his Section 1981 claims as well.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the allocation of the burden of production and an order for the presentation of proof in Title VII discrimination cases. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima facie case of unlawful race discrimination by a preponderance of the evidence. 411 U.S. at 802. A prima facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977).

If the plaintiff establishes a prima facie case of racial discrimination, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-discriminatory reasons for its employment action. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). "This intermediate burden is 'exceedingly light.'" *Id*. (citing *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994)). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *See McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253-255 (1981).

Once the employer satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the

adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citations omitted). The establishment of a prima facie case does not in itself entitle a plaintiff to survive a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987); *Pace v. Southern Ry. Sys.*, 701 F.3d 1383, 1389 (11th Cir. 1983). After an employer proffers non-discriminatory reasons for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is pretextual." *Chapman*, 229 F.3d at 1037.

Having considered the evidence submitted by the parties in the light most favorable to the Plaintiff, the court finds that Plaintiff does not satisfy his prima facie burden for any of his claims.

    B.    *Hostile Work Environment*

In order to establish a prima facie case in a racially hostile work environment case, a plaintiff must "show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [race]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

In this case, Plaintiff fails to satisfy the burden imposed by the fourth prong of the inquiry: "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Id.* at 1275. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.

These may include the frequency of the discriminatory conduct; its severity; whether it is a physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. at 23. Moreover, the work environment must be such that both a reasonable person would find it hostile or abusive and also that the plaintiff subjectively found it to be hostile or abusive. *Id.* at 22. Finally, in examining a hostile work environment, the court need not find that the plaintiff suffered any tangible effects to his job performance. *Id.*

Taking each factor individually, the only factor weighing in Plaintiff's favor is the frequency of the alleged conduct. Plaintiff alleges that he was constantly scrutinized in ways his predecessor and meat-market managers at the other stores were not. He further alleges that he was frequently forced to watch African-American customers in order to indulge the groundless delusions of his store manager that all African-Americans entering the store intended to steal merchandise. However, constant scrutiny of Plaintiff's performance in combination with several incidents of being forced to watch other African-Americans is not sufficient for a finding that Plaintiff's working conditions were altered or that Plaintiff was subject to severe conduct. *See*, *e.g.*, *Dudley v. Wal-Mart Stores, Inc.*, 931 F. Supp. 773, 816 (M.D. Ala. 1996) *abrogated on other grounds by Moore v. State of Alabama,* 989 F. Supp. 1412 (M.D. AL 1997) (Plaintiff's claim that her supervisor "scrutinized her work and pointed out her shortcomings on a regular basis . . . does not approximate the severity required to state a claim for hostile work environment.") Plaintiff has not presented evidence indicating that he was physically intimidated or humiliated by any act or request of his supervisor. Although the alleged conduct is both offensive and demeaning, it does not resemble the sort of conduct the Eleventh Circuit has found to be so severe and pervasive as to alter a plaintiff's working

conditions. *See e.g., E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1069 (11th Cir. 1990) (finding racially hostile work environment where plant manager "used words including: 'niggers,' 'ignorant niggers,' and 'swahilis.' The record also shows that [he] said 'blacks were meant to be slaves' and were of lower intelligence. He proclaimed that '[t]hose niggers out there will not get anywhere in this company.'"); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d at 1273, 1276-77 (racially hostile work environment existed where "three to four times a day," foreman called plaintiff "Wetback," "Spic," and "Mexican Mother F-----" and foreman and supervisor "used the derogatory names in an intimidating manner, shouting them at [Plaintiff] during the course of berating him for his job performance, or when they were "arguing with him," were "mad with him," or were "taunting him. . . .") The acts Plaintiff alleges do not meet the standard for severity set by the Eleventh Circuit. Taken individually, these acts are not severe, and taken together, they are not pervasive.

C. *Retaliation*

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Under the *McDonnell Douglas* approach, as set forth above, a plaintiff has the initial burden of establishing a prima facie case of unlawful discrimination by a preponderance of the evidence. 411 U.S. at 802. The Eleventh Circuit has stated that:

> To establish a prima facie case of [Title VII] retaliation, [an employee] must show: (1) [he] engaged in protected activity; (2) [his] employer was aware of that activity; (3) [he] suffered adverse employment action; and (4) there was a causal link between [his] protected activity and the adverse employment action.

9

*Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir. 1999) (citing *Little v. United Tech.,* 103 F.3d 956, 959 (11th Cir. 1997)).

Plaintiff fails to meet his prima facie burden with respect to both the first and fourth elements. Regarding the first element, Plaintiff contends that asking Woodham why the store had so few African-American cashiers is a protected activity. As previously stated, Title VII prohibits retaliatory action against an employee "because he has opposed any practice made an unlawful employment practice by this [title]." 42 U.S.C. § 2000e-3(a). In determining whether a plaintiff sufficiently opposed, for example, a policy or action of the company or remark of an employee as discriminatory, "[t]he relevant question [is] . . . whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 559-60 (D. Kan. 1995). "[T]he employee must, at the very least, communicate [his] belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of coworkers and rely on the employer to infer that discrimination has occurred." *Webb v. R & B Holding Co., Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998). The employee must show that she opposed the employment action or decision because it was discriminatory. *See Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir.1987) (finding expression not protected because plaintiff "has not shown that he ever opposed the format change as discriminatory before he was fired. He merely opposed the change for personal reasons. . . .").

In this case, it is not clear that Plaintiff opposed an unlawful employment practice. *See Wohlhueter v. Cambria Fabshop-Atlanta, Inc.*, 2005 WL 3359705 (N.D. Ga. 2005) (Plaintiff who asked her supervisor "why they hired . . . that guy" did not complain of sex discrimination.) If he

was opposing something, Plaintiff has not demonstrated that Woodham had reason to know he was complaining about an illegal employment practice. While Plaintiff did ask why the store had fewer African-American cashiers than was proportionate to its customer base, and thus might have alerted Woodham that Plaintiff was asking a question about race or suggesting the desirability of diversity, his inquiry is a far cry from alleging that an employee or the company is intentionally refusing to hire African-Americans. Plaintiff provides no evidence that Woodham knew about racial incidents which Plaintiff allegedly experienced or witnessed. Nor does he provide evidence that Woodham was aware of any racial problems in the store. It is just as likely that Woodham believed that Plaintiff was inquiring for personal reasons, given that Plaintiff's daughter had applied for a position as cashier. (Doc. #42, Ex. C at 126.)

Finally, Plaintiff has failed to establish a causal connection between his protected activity and his termination. A causal connection is demonstrated when a plaintiff proves "'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). "Plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999). Causation is also established, according to the "cat's paw" theory, if an employee who harbors racial animus toward the plaintiff, influences the decision-maker to take an adverse employment action toward the plaintiff. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998).

Here, Plaintiff has provided no evidence which suggests a causal link between his alleged

x

complaint of racial discrimination to Woodham and his termination. Specifically, he has provided no evidence that Buster Wilson, the decision-maker, was influenced by anyone harboring racial animus toward Plaintiff, and he has provided no dates by which the court might judge a temporal relationship between his alleged complaint and his termination. Accordingly, Plaintiff has presented insufficient evidence to establish a prima facie case of retaliation. Defendants are entitled to summary judgment on Plaintiff's retaliation claim.[7]

### V.  CONCLUSION

For the reasons stated above, it is

ORDERED that Defendant's motion for summary judgment (Doc. # 40) is hereby GRANTED. A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 2nd day of November, 2006.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[7] Because Plaintiff fails to present a genuine issue of material fact for any of his claims, the court pretermits discussion of defendant's argument that Plaintiff's EEOC charge failed to name Buster Wilson and to state a claim for hostile work environment.